JS - 6
cc: see G - 75 attached

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Case No. SACV 08-1377 DOC (ANx)                                     Date: January 30, 2009
   (Orange County Superior Court #30-2008-00113993)

Title: LES TROISI V. CANNON EQUIPMENT COMPANY; CANNON EQUIPMENT WEST, INC., AND DOES 1-10

DOCKET ENTRY
[I hereby certify that this document was served by first class mail or Government messenger service, postage prepaid, to all counsel (or parties) at their respective most recent address of record in this action on this date.]
                                            Date:_____   Deputy Clerk: _____

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

   Kristee Hopkins                                              Not Present
   Courtroom Clerk                                              Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFFS:   ATTORNEYS PRESENT FOR DEFENDANTS:

NONE PRESENT                                                   NONE PRESENT

PROCEEDING (IN CHAMBERS): ORDER GRANTING MOTION TO REMAND

  Before the Court is Plaintiff Les Troisi's Motion to Remand to State Court under 28 U.S.C. § 1447 on the grounds that there is no diversity between the parties, and therefore removal to this Court is improper. Also before the Court is Defendant Cannon Equipment West's related Motion to Dismiss Fraudulent Defendant for Failure to State Claim Upon Which Relief Can Be Granted. The Court addresses the motions jointly as they require the Court to resolve the same legal issue. The Court finds the matters appropriate for decision without oral argument. Fed. R. Civ. P. 78; Local R. 7-15. After considering the moving, opposing, and replying papers thereon, and for the reasons stated below, the Court hereby GRANTS the Motion to Remand and DENIES the Motion to Dismiss.

I.      **Background**

   a.     **Troisi's Employment Relationship with Cannon**

Plaintiff Troisi is a seventy year old resident of Fullerton, California. He was hired by Cannon Equipment as a sales representative in 1986. Cannon Equipment is a Minnesota corporation with its principal place of business in Minnesota, though it engages in business on a national and global level. Cannon Equipment hired Troisi in order to enter the niche market of selling display racks to retailers. Mr. Troisi's career with Cannon Equipment was allegedly very successful as he became one of its top sales executives. In 1999, after Troisi received a job offer from a competitor, Cannon Equipment promoted him to Vice President of Sales for Front End Merchandise. As a result of this promotion, Troisi signed an Employment Agreement with Cannon Equipment that contained a Minnesota forum-selection clause, a Minnesota choice of law clause, and a non-compete clause.

Cannon Equipment acquired a manufacturing facility in Garden Grove, California in 1986, and as a result, formed Cannon Equipment West ("Cannon West"). Cannon West is a Minnesota corporation with its principal place of business in California. While Plaintiff contends that Cannon West and Cannon Equipment are corporate affiliates and wholly owned subsidiaries of Imi Americas, Inc., Defendants contend that Cannon West is the wholly owned subsidiary of Cannon Equipment. Defendants contend that Cannon West is merely a manufacturing facility and that it employs no sales representatives. Troisi, on the other hand, contends that Cannon West also employed sales associates whom he managed. Troisi was provided an office space in Cannon West's Garden Grove manufacturing facility, according to Defendants as a matter of convenience, because Cannon Equipment maintains no offices in California. Throughout his 21 year career, he worked out of the Garden Grove facility.

In 2007, Troisi claims that things turned for the worse when Charles Gruber was named the president of Cannon Equipment. The parties dispute whether he was also named the president of Cannon West or if he was just on the board of directors for Cannon West. Nonetheless, Gruber allegedly demonstrated a hostile attitude toward Troisi, criticizing Troisi's age and indicating that Troisi was getting paid too much for the work he performed.

Gruber then allegedly took steps to force Troisi out of his job. Gruber assigned Troisi's accounts to younger clients. Gruber also allegedly reversed Cannon Equipment's promise to extend Troisi's employment contract and without cause refused to renew Troisi's employment or to otherwise allow Troisi to provide consulting services to Cannon Equipment as previously promised. Gruber then told Troisi that he could no longer use his office in the Garden Grove facility, and Troisi would have to work from home. Troisi was then allegedly denied access to his work emails or servers and access to the Garden Grove facility. Because of this hostile treatment, Troisi was allegedly forced to retire, such retirement becoming effective on February 1, 2008.

    **b.**    **The Minnesota Action**

On June 16, 2008, Cannon Equipment brought suit against Troisi in the United States District Court, District of Minnesota for breach of the parties' Employment Agreement. The complaint alleged that Troisi violated the non-compete and non-disclosure provisions of the contract by assisting his son-in-law in operating a newly formed company, Customer Merchandising Displays ("CMD"), engaged in the exact same business as Cannon Equipment. Specifically, CMD allegedly marketed and sold the same display racks, hired Cannon Equipment employees, and took one of Cannon Equipment's largest customers.

In response to the complaint, Troisi filed a motion to dismiss or transfer to the Central District of California. On October 22, 2008, The Minnesota Court denied the motion and in doing so upheld the forum selection clause and choice of law provisions in the parties's Employment Agreement in favor of a Minnesota forum and the application of Minnesota law to the parties' contract. The Minnesota action is currently pending.

Due to the loss of business from the competition of CMD, Defendants contend that the Board of Directors of Cannon Equipment were forced to vote to close the Garden Grove facility. As a result, Cannon West ceased manufacturing and operations on October 31, 2008.

    **c.**    **The California Action**

On October 2, 2008, Troisi filed charges against Cannon Equipment with the California Department of Fair Employment and Housing (DFEH) due to the alleged age discrimination that occurred during his employment. The DFEH issued a right to sue letter on October 9, 2008. On October 29, 2008, Troisi filed a complaint against Cannon Equipment in Orange County Superior Court. His complaint raised two main charges against Cannon Equipment (the specific allegations in the subsequent First Amended Complaint are discussed below). First, he seeks to have the court hold that the covenants in the Employment Agreement constitute an unlawful restriction on post-employment pursuant to California law. Second, he alleges age discrimination against Cannon Equipment.

    **d.**    **The First Amended Complaint**

After filing discrimination charges against Cannon Equipment, Troisi filed similar charges against Cannnon West due to Gruber's alleged position as the President for both entities and Cannon West's alleged operational control over the Garden Grove facilities and Cannon Equipment employees who worked out of the facility. Troisi filed charges with DFEH on November 12, 2008, alleging that Cannon West allowed Gruber to create a hostile work environment in violation of Troisi's civil rights. The DFEH issued a right to sue letter on November 21, 2008.

Troisi consequently amended his complaint on November 25, 2008, alleging the following causes of action: (1) injunctive relief; (2) declaratory relief; (3) violation of Business and Professions Code § 16600; (4) violation of Business and Professions Code § 17200; (5) violation of Government Code § 12940(a); (6) violation of Government Code §§ 12940(j) and (k); (7) constructive discharge; and (8) unpaid wages in violation of Labor Code §§ 201, 202, 203 & 218.8.  Cannon West was added as an additional defendant only to the fifth, sixth, and seventh causes of action.  The claims against Cannon West are based on its alleged supervisory role over the Garden Grove facilities and the actions of Gruber.

### e. The Instant Motion

Cannon Equipment removed the action to this Court on December 4, 2008.  At that time, Plaintiff had already filed the First Amended Complaint in state court adding resident defendant Cannon West.  However, at the time of removal, neither Cannon Equipment nor Cannon West had been served with the amended complaint.

Cannon Equipment, in opposing the Motion to Remand and in moving for its Motion to Dismiss, alleges that Cannon West is a sham defendant.  Defendants repeatedly argue that Cannon West is a mere manufacturing facility that occasionally provides Cannon Equipment sales associates with offices.  Defendants point out that the plant manager at Cannon West, Edward Juline, controlled and oversaw all operations at Cannon West, reported directly to Gruber, and did not supervise Plaintiff.  Further, Defendants contend that Troisi's Employment Agreement was only with Cannon Equipment and that Plaintiff's direct supervisors were all employed and located at Cannon Equipment in Rosemont, Minnesota.  Thus, they argue that Cannon West, now a defunct corporation, can in now way be considered an employer of Troisi or otherwise be liable for any of his alleged injuries.  In particular, Defendants contend that the addition of Cannon West is a ploy to avoid federal jurisdiction in the instant matter and to ultimately evade the pending Minnesota action and that Court's ruling upholding the forum-selection clause.  As a result, they argue the motion to remand should be denied.

## II. Legal Standard

### a. Remand

Remand may be ordered for lack of subject matter jurisdiction or any defect in the removal procedure.  28 U.S.C. § 1447(c).  Removal of state actions is allowed only if the plaintiff could have originally filed the action in federal court.  *See* 28 U.S.C. § 1441.  "The burden of establishing federal jurisdiction is on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction."  *Prize Frize, Inc. v. Matrix (U.S.), Inc.*, 167 F.3d 1261, 1265 (9th Cir. 1999); *see Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

    **b.**    **Fraudulent Joinder**

A court does not consider the citizenship of a "fraudulently joined" defendant when determining whether complete diversity exists such that removal is proper pursuant to 28 U.S.C. § 1441(b). *Morris v Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001); *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998). A defendant is "fraudulently joined" when "the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *Morris*, 236 F.3d at 1067 (quoting *McCabe v Gen. Foods Corp.*, 811 F.2d 1136, 1339 (9th Cir. 1987). The removing defendant may submit facts showing that a resident defendant has no real connection with the action. *Ritchey*, 139 F.3d at 1319.

A party is only deemed to have been "joined 'fraudulently' if after all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff could not possibly recover against the party whose joinder is questioned." *Kalawe v. KFC Nat. Mgmt. Co.*, Civ. No. 90-007799, 1991 WL 338566, at *2 (D. Hawaii July 16, 1991) (*citing Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1426 (9th Cir. 1989). Further, "'district courts must not 'pretry' substantive factual issues in order to answer the discrete threshold question of whether the joinder of an in-state defendant is fraudulent. *Green v. Amerada Hess Corp.*, 707 F.2d 201, 204 (5th Cir. 1983) (*quoting B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 546 (5th Cir. 1981). "The question is simply whether there is any possibility that plaintiff will be able to establish liability against the party in question." *Briano v. Conseco Life Ins. Co.*, 126 F. Supp. 2d 1293, 1296 (C.D. Cal. 2000). And the burden is on the removing party to demonstrate fraudulent joinder. *Id*.

**III.**    **Discussion**

    **a.**    **Fraudulent Joinder**

In order to establish if removal was proper, the Court must determine if Cannon West is a fraudulently joined party. Thus, the Court must examine if Plaintiff has failed to state cause of action against Cannon West pursuant to its fifth, sixth, and seventh causes of action for violations of California Government Code §§ 12940(a), (j), (k), and constructive discharge. This ultimately requires the Court to determine whether Cannon West can possibly be considered an employer of the Plaintiff under applicable law. The allegation that Cannon West can constitute an employer of Plaintiff is based on Plaintiff's claim that Cannon West exercised supervisory control over operations at the Garden Grove facility as well as Cannon West and Cannon Equipment employees working out of the Garden Grove facility.

As a preliminary matter, the Court notes that Plaintiff provides the following facts in support of his contention that Cannon West is also his employer: (1) Plaintiff worked out of the Cannon West Garden Grove facility throughout his career; (2) Charles Gruber is allegedly the president of both

MINUTES FORM 11 DOC                                                                    Initials of Deputy Clerk
\_\_kh\_\_
CIVIL - GEN                                                                                                          Page 5 of 10

entities; (3) Cannon Equipment and Cannon West are affiliates or at least in a parent-subsidiary relationship; and (4) Plaintiff managed other sales associates out of the Garden Grove facility demonstrating that sales associates were in fact employed at the Garden Grove facility, not just manufacturing employees.  The legal theories offered by Plaintiff justifying the possible treatment of Cannon West as Troisi's employer are numerous as referenced in both the Motion to Remand and discussed in the Motion to Dismiss.  A few of those legal theories are discussed below.  The Court need not address all of theories as the Court finds that Plaintiff has at least raised the possibility in his pleadings that Cannon West could constitute a  liable entity under FEHA for discrimination faced by Troisi.

### 1. Employer under California's Fair Employment and Housing Act

#### A. Definitions under FEHA

The relevant definitions under FEHA include the following.  Cal. Gov't Code § 12926(d) defines an employer as  "any person regularly employing five or more persons, or any person acting as an agent of an employer, directly or indirectly...."  Further, a "supervisor", also liable under FEHA, means "any individual having the authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or the responsibility to direct them, or to adjust their grievances, or effectively to recommend that action , if, in connection with the foregoing, the exercise of that authority is not of a merely routine or clerical nature, but requires the use of independent judgment."  Cal. Gov't Code § 12926(r).  Plaintiff and Defendants raises a number of arguments based on these definitions.

#### B. FEHA Factors for an Indirect or Joint Employer

Plaintiff argues that California case law has developed several factors to determine whether a corporate affiliate can be held liable under FEHA to an individual directly employed by the affiliated corporation.  The case law and factors cited by Plaintiff address whether a particular entity can be referred to as the indirect employer of the plaintiff.  Factors considered include the following:

> [P]ayment of salary or other employment benefits and Social Security taxes, the ownership of the equipment necessary to performance of the job, the location of where the work is performed, the obligation of the defendant to train the employee, the authority to establish work schedules and assignments, the defendant's discretion to determine the amount of compensation earned by the employee, the skill required of the work performed and the extent to which it is done under the direction of a supervisor, whether the work is part of the defendant's regular business operations, the skill required in the particular occupation, the duration of the

relationship of the parties, and the duration of the plaintiff's employment.

*Vernon v. State*, 116 Cal. App. 4th 114, 125 (2004).

And "[o]f these factors, the extent of the defendant' right to control the means and manner of the worker's performance is the most important." *Id*. at 126 (quoting *Lee v. Mobile County Com'n*, 954 F. Supp. 1540, 1546 (S.D. Ala. 1995).

Plaintiff argues that there is at least a possibility that Cannon West is an indirect employer because Cannon West owned and operated the facility out of which Troisi worked.  Further, Cannon West owned all the equipment that Troisi used to complete his work and this very equipment is what Troisi was denied access to upon his alleged constructive discharge.  Further, Plaintiff points out that the presence of a contract between the parties is not required under FEHA.  Defendants argue that Cannon West in no way supervised Troisi and that they did not train, hire, transfer, promote, or discipline him.  They further point out that Troisi's wages are paid by Cannon Equipment.  In addition, they argue that any actions taken by Gruber against Troisi involve Gruber acting in his capacity as the President of Cannon Equipment, not Cannon West.  However, to the extent Gruber was able to limit Troisi's access to the Garden Grove facility and prevent him from receiving equipment from the Garden Grove facility to work at home, these actions at least implicate Gruber's power as the president of Cannon West, favoring Plaintiff's recitation of the facts.

Defendants also contend that Cannon West itself did not employ any sales representatives and that sales representatives at Cannon West are only those of Cannon Equipment.  However, in a declaration relevant to the Minnesota Action, Troisi's alleged assistant, Larry Cabico, contends that he was a sales representative employed by Cannon West, not Cannon Equipment.  Thus, there is at least a factual question regarding whether Cannon West was a mere manufacturing facility or if it had a larger role in sales than it argues.  Further, Troisi contends that he worked side-by-side with sales representative employed by Cannon West.  Thus, to the extent a sales task force operated out of and was employed by Cannon West, Troisi's argument that the company was at least an indirect employer of him is bolstered.

While Defendants are correct to state that Plaintiff's complaint does not implicate all the relevant facts to determining an indirect employment relationship, his pleading at least raise the possibility.  And Defendants' evidence does not clearly foreclose it.

### C. Integrated Enterprise

Due to the similarity in language and objectives between Title VII of the Civil Rights Act and FEHA, California courts often turn to federal statutes for guidance in interpreting FEHA.  *Vernon v. State*, 116 Cal. App. 4th 114, 125 (2004) (*citing Richard v. CH2m Hill, Inc.*, 26 Ca. 4th 798, 812

(2001). Under an "integrated enterprise" test, courts look to four factors to determine if two corporate entities can be treated as a single employer: (1) interrelated operations; (2) common management; (3) centralized control of labor operations; and (4) common ownership or financial control. *Kang v. U. Lim America, Inc.*, 296 F.3d 810, 815 (9th Cir. 2002); *see also Laird v. Capital Cities/ABC, Inc.*, 68 Cal. App. 4th 727, 737 (1998).

In reliance on *Kang*, Plaintiff contends that there is at least a possibility that Cannon Equipment and Cannon West can be considered an integrated enterprise, and thus a single employer, allowing for the joinder of Cannon West to the discrimination claims. In *Kang*, U. Lim America was a U.S. based company that owned and operated U. Lim de Mexico, an electronic manufacturing company in Tijuana, Mexico. *Kang*, 296 F.3d at 814. In analyzing the factors, the court noted particular facts as relevant: (1) that U. Lim America had no facility so its employees had to work out of the Mexico facility; (2) that both companies had the same president and that the U. Lim de Mexico supervisors reported to U. Lim America's managers; (3) that U. Lim America had authority to fire and hire U. Lim Mexico employees; and (4) that both entities were owned and controlled by the same individual. *Id*. at 815-16.

While Defendants argue that Plaintiff has not plead all relevant facts demonstrating an integrated enterprise and contends that it cannot, Plaintiff at least raises the possibility at this jurisdictional stage. Gruber is allegedly the president of both entities. The alleged supervisor of Cannon West, Edward Juline, reports directly to Gruber, the President of Cannon Equipment  The entities are either jointly owned or Cannon Equipment owns Cannon West as a wholly owned subsidiary. And because Cannon Equipment has no facility in California, its employees work out of the Cannon West facility. Plaintiff at least raises the possibility at this stage that Cannon Equipment and Cannon West constitute an integrated enterprise.

### D. Agency

Pursuant to the FEHA, an employer can be liable for the discriminatory acts of its agents. Cal. Gov't Code §12926(d). Agency is a fiduciary relationship in which one individual or entity consents to allow another individual or entity to act on its behalf or subject to its control. *Childs v. Local 18, Int'l Bhd. of Elec. Workers*, 719 F.2d 1379, 1382-3 (9th Cir. 1983). Thus, Plaintiff argues that liability can be imposed on Cannon West under FEHA if it acted as Cannon Equipment's agent with regards to the discriminatory practices Troisi faced. As previously stated, Cal. Gov't Code § 12926(d) defines as an employer as "any person regularly employing five or more persons, or *any person acting as an agent of an employer, directly or indirectly....*" (emphasis added). Thus, an agent of the employer can also constitute an employer under FEHA for purposes of discrimination liability.

Plaintiff alleges, and Defendants do not dispute, that the equipment Troisi used to complete his job tasks was at the Garden Grove facility. When Gruber allegedly told Troisi that he

could no longer use that equipment or office space, Cannon West could arguably be considered the agent of Gruber in effectuating that mandate. Further Gruber had indicated to Troisi that Troisi would be provided with equipment in order to continue working from home. However, that equipment, such as a computer, was never given to Troisi. To the extent Troisi alleges all is work equipment was owned by Cannon West and Cannon West participated in not allowing Troisi access to that equipment either at the Garden Grove facility or by delivering the equipment to Troisi's home, Cannon West can at least potentially be considered an agent of Gruber and Cannon Equipment in forcing Troisi out of his job. The allegations of the complaint at least raise this possibility, and Defendants do not clearly counter the point that Troisi was shut out of the Cannon West facility. Ostensibly, someone at Cannon West had to participate in this shut out which gives rise to the possibility of agency liability.

### 2. Conclusion

Defendants have not met their burden of showing that the joinder of Cannon West was fraudulent or without any factual basis. At this stage, the Court need not and should not resolve whether Plaintiff will ultimately prevail in its claims against Cannon West. The Court must only determine if there is at least a possibility of liability ast to Cannon West. Based on the facts alleged in the complaint, the Court finds that there is. The Court cannot at this stage find that the settled law of California would not also allow for liability against Cannon West under FEHA. While the Court is sympathetic to Defendants' argument that Plaintiff is trying to evade the Minnesota action, the Court cannot as a result exercise jurisdiction where such exercise is improper based on the applicable legal standards.

Further, the Court notes that the standard for proving fraudulent joinder requires Defendants to show that Cannon West has no real connection to the action. The Court cannot see how this is the case when Cannon West is the facility out of which Troisi worked from and his direct supervisor, Gruber, potentially acted as the president for both Cannon Equipment and Cannon West. While Defendants argue that Grubers' joint position as president for both entities does not necessarily implicate Cannon West, it at least raises the possibility at this preliminary stage. Further, Plaintiff's complaint is not required to be a model of detailed pleading for it to prevail on his remand motion.

### b. Service

Cannon Equipment argues that its removal of this action was proper because at the time it removed the action, it had not yet been served with the First Amended Complaint. While this point demonstrates that Cannon Equipment had a good faith belief in pursuing removal, the addition of Cannon West still makes removal improper, lack of service prior to removal notwithstanding, because the Court does not find Cannon West to be a sham defendant.

### c. Attorney's Fees

The party seeking remand is entitled to "just costs and any actual expenses, including attorneys' fees, incurred as a result of removal" where that removal was improper. 28 U.S.C. § 1447. Although the Court has broad discretion to award fees in this context, *Moore v. Permanente Medical Group, Inc.*, 981 F.2d 443, 447 (9th Cir. 1992), "absent unusual circumstances, courts may award attorneys' fees . . . only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141, 126 S. Ct. 704 (2005).

Here, Defendant Cannon Equipment had a proper basis for removal because the First Amended Complaint had not yet been served on it adding a resident defendant. Therefore, Plaintiff's request for fees is hereby DENIED.

## IV.     Disposition

For the foregoing reasons, Defendants' motion to drop Cannon West as a fraudulently joined defendant is hereby DENIED, and Plaintiff's motion to remand is hereby GRANTED. As a result, Defendants' additional Motion to Dismiss for Improper Venue and Failure to State a Claim Upon Which Relief Can Be Granted is deemed MOOT.

The Clerk shall serve this minute order on all parties to the action.